Thank you, Your Honor. May it please the court, my name is Serena Hargrove and I represent the government in this matter. I would like to please reserve five minutes for rebuttal. Thank you. The question before the court today is whether the district court erred when it awarded fees for an administrative proceeding under Section 2412 D1A of the Equal Access to Justice Act, EJA. That section allows district courts to award fees in civil actions filed in federal district courts. The government contends that the district court's decision to award fees for administrative proceedings under this section was error because, first, the plain language of EJA requires a different outcome. Second, that plain language must be strictly construed because it is a partial waiver of the government's sovereign immunity. And third, because the administrative proceeding at issue here was not the unusual kind of hybrid proceeding that was present in the Sullivan v. Hudson case. Turning first to the plain language of the statute. Was that argument clearly made to the district court? Yes, Your Honor. It was certainly raised. I have to acknowledge that it was raised amidst as many issues come before the district court, amidst countless other issues. But Western Watersheds Project argued in a brief, in one line, that Section 2412 D1A allowed for fees in this case, and it cited Sullivan v. Hudson for the proposition that when agency proceedings were important and helpful to a district court's review. And the district court relying on that said that, granted the fees. What was the, what position did the government, I guess it wasn't, I wasn't asking, did the government argue what they argued to us? Your Honor, the government argued that Section 2412 D3 was the provision that allowed for fee awards for administrative proceedings, and that Sullivan v. Hudson and the many other cases that WWP cited was inapposite. The district court then accepted WWP's invitation to rely on Hudson, and it did so, and it addressed Hudson at significantly more length than either of the parties had. Okay. Yes. Turning to the plain language of EJM, Section 2412 D1A and Section 2412 D3A are two separate provisions, and they allow courts, D1A allows courts to award fees in civil actions. D3A allows courts to award fees in administrative proceedings, but it only allows courts to award fees to the same extent they can do so, that administrative agencies can do so, sorry, under 504A. And we know because the Ninth Circuit held two years ago these same parties, that Section 504A does not allow fees for administrative proceedings like the one in this case, which challenge final agency actions in the form of grazing permits. And that's because permits are licenses, and 504A explicitly excludes licenses, licensing proceedings from the kinds of proceedings for which fees may be awarded. So in this case, there was no dispute that 2412 D3 did not allow for fees for the administrative proceedings at issue. And it was, and everyone agrees with that. The government in this case did not dispute that 2412 D1A did allow for fees for the proceeding that had occurred in the district court. The only question here is whether that D1A, which allows for fees in civil actions, is so broad that it can include administrative proceedings. Ardestani, Supreme Court case from 1991, clearly explained that EJA is a partial waiver of the United States' sovereign immunity. As such, it must be strictly construed. Given that, the district court's construction of the term civil action, as including administrative proceedings in this case, runs afoul of Ardestani's requirement of strict construction. Finally, Your Honors, this is not an administrative proceeding. The proceeding that preceded the civil action in this case was not an administrative proceeding like the one in Sullivan v. Hudson. And that proceeding was a very unusual kind of proceeding. Sullivan acknowledged that itself and explained that in these certain kinds of remands in the social security context, the district court and the agency are really acting as co-participants. The district court can retain jurisdiction after a civil action has been filed and remand for specific factual findings from the agency. That it needs before it can enter a decision. And that's what occurred in Sullivan v. Hudson. A civil action had been filed. The district court remanded to the agency while retaining jurisdiction. And then when the case came back from the agency, the district court entered final judgment. In that context, and really only in that context, has the Supreme Court ever held that 2412 D1A, which allows for fees in civil actions, allows for fee awards for administrative proceedings. Did the government make that, did the government ask for reconsideration here? Your Honor, the government did not. And I can explain our reasoning. It's not in the record. I take it you did not. You were not the one. Did you handle the? I did not. Another assistant U.S. attorney did. But the government carefully considered whether to ask for reconsideration and decided against it, Your Honor, because we learned of several other unpublished district court decisions awarding fees in similar contexts. We also learned of another district court that was considering awarding fees in a similar context. So you decided to appeal? Yes, Your Honor. Your Honors, I would commend the two opinions, Ninth Circuit opinion, Nadaraja, and the Supreme Court's decision in Shalala to you. Nadaraja dealt with very compelling circumstances in which an award of fees must have been tempting for the court to award. And the Ninth Circuit held fast and explained that it simply couldn't disregard the plain language of the statute and award fees, even though the administrative proceedings in that case had been extraordinarily helpful to the district court and had even saved the district court from having to hold an evidentiary hearing. Nadaraja, that's an unpublished decision, right? Or is it not? No, Your Honor. That's published at 569 F. 3rd. 906. It was decided in 2009. And Mendenhall is the other Ninth Circuit decision, which was decided in 2000. And in both of those cases, the Ninth Circuit explained that Sullivan v. Hudson has been interpreted very, very narrowly. And it would not apply in circumstances like these. Your Honors, I would also like to point out that... The Supreme Court case explaining Sullivan that you think is the best is what? Shalala v. Schaefer. Yes, Your Honor. It's very helpful. Is that written by Justice O'Connor, too? I'm not certain, Your Honor. No, I don't believe... It was a seven-justice majority and then two were concurring, but I'm not certain who wrote that. One other point, Your Honors. There was litigation addressing the same allotment in another case, an earlier case. And WWP in its responding brief asserted that the existence of that prior litigation somehow conferred jurisdiction continuously over the district court. On litigation? Exactly, Your Honor. IWP v. Hahn. And the government disagrees with that and notes that the district court acknowledged in its decision on page 5, that's ER 5 as well, that this was not a remand situation. It acknowledged that Sullivan v. Hudson had been a remand situation and it explained that this was not a remand situation. The agency issued a new decision, a new final decision, when it published the grazing permit that was challenged in this case. And WWP filed a new challenge to that new decision in the underlying administrative proceeding. Counsel, you had said you wanted to keep five minutes for rebuttal. I do, Your Honor. It's entirely up to you. No, I do, Your Honor. Thank you very much. Thank you. Thank you, and if it may please the Court, Laird Lucas for the Plaintiff Appellee Western Watersheds Project. I want to address three topics today. The first is the waiver issue. The second is the merits of Ms. Hargrove's argument. And the third is what relief the Court should order. So on the waiver issue, Judge Schroeder, you asked, had the argument been presented? And respectfully, it was not presented. And if you look at page 9 of their opening brief, it sets forth a three-prong requirement for administrative fees to be awardable under 2412D1A. This is how Ms. Hargrove has interpreted the Sullivan v. Hudson decision. With three prongs, the administrative proceeding must occur after the civil action is filed, it must occur while the district court retains jurisdiction, and it must be required before the district court can enter final judgment. That's the heart of their argument interpreting Sullivan. When you look at their brief in the district court, which is ER 116, this is the only place they address this entire argument. They don't talk about 2412D1A at all, and they spend a single sentence on Hudson which says, in total, Sullivan v. Hudson involved a court-ordered Social Security remand hearing. They don't talk about the three-part test that Ms. Hargrove has articulated here, and certainly they don't discuss the subsequent Supreme Court cases, Melkoian, the Shalala case, as well as the two Ninth Circuit cases that she's relied on, Mendehall and Narraja. None of those were briefed to the district court. Now, I will concede our briefing was slim as well, and the district court's ruling was slim because the district court wasn't provided with all of this authority. A lot of the focus in the district court was whether we could get fees under the administrative provision of 504 and 2412D3. That claim has now been resolved by this court and the other Western Watersheds Project v. Department of Interior case that we've both cited. So we agree we can't get administrative fees for that, but the holding there was a licensing for grazing permit qualifies as a non-adversarial proceeding under the APA. Therefore, fees are not available under 504. What Sullivan expressly holds is that you can still get fees for administrative work in non-adversarial proceedings under certain circumstances. And Judge Windmill, Chief Judge Windmill, who I think is careful to look at the law and look at the facts assigned to him, had he been presented with these authorities, we could have gone through it. Counsel, I'll just say from my perspective, just one, Judge. I don't really understand the waiver argument because they did say Sullivan doesn't apply. And if they said that, aren't they free in an appeal to raise any legal grounds on that? Judge, I would respectfully disagree. What's a case, what's your best case that would say that when they argue the case doesn't apply but do it summarily in a sentence? I've got four cases, Judge. They then can't express their views. The first is Broad v. C. Laska, 85 F. 3rd, 422 at 430. And that's where this Court said before an argument will be considered on appeal, it must be raised sufficiently for the trial court to rule on it. And that was followed in Sofomore v. Brown, 124 F. 3rd, 1179 at Note 4. There's also Corregis, C-O-R-G-I-S, 201 F. 3rd, 443. And West v. Napa County, 165 F. 3rd, 920. All of these talk about the level of detail of an argument. And I would say put yourself in Judge Windmill's position. He was never, if this Court now comes out and says he got it wrong, it will be blindsiding Judge Windmill because he was never presented with this detailed argument. Okay, but this stuff isn't really personal to Judge Windmill. Understood. This has to do with what does the Hudson case mean? And it was cited, the case was cited to him, and the government said it doesn't apply. Then I will move to the second part of my argument, Judge, the merits. Speaking for myself, I have enormous respect for Judge Windmill, but a waiver question is a little bit different. And so on the merits, had we gotten into this, what I would have argued in more detail is we actually do fall within Sullivan's prescriptions of when you can award administrative fees that are intimately tied to resolution of the district court action  Those are the two-pronged tests set forth in Sullivan that we argued and that Judge Windmill found, but we would have provided much more detail on why the unusual procedure of this case looks a lot like Sullivan. Admittedly, it's not a section, sentence six remand under Social Security Act. What it was, though, was the prior Hahn case had included this allotment, had been taken to a permanent injunction requiring BLM to do more. The district court retained jurisdiction over that injunction. They did more as required, and we challenged that in an administrative hearing because of the way the Administrative Procedure Act is set up. The courts have to defer to the technical expertise of agencies, but the BLM's grazing regs allow an administrative appeal where you create a record de novo. We can cross-examine witnesses. We can cross-examine what they did. We can prove, as we did, that the science wasn't being followed by the agency. We had to go through that in order to win in district court. Is there any case recognizing the availability of fees in a case like this where there's, as you point out, where there's a preliminary injunction and the administrative proceedings are going on pursuant to the preliminary injunction? The closest case I could find was the Quinn Haggatt case, and I probably didn't pronounce that right, but it's the Alaska case under ANILCA. It was not an AJA case, admittedly, but you had a multiplication of district court and administrative proceedings all going on at the same time, and this court ended up saying the plaintiffs there should get their administrative fees because that work was necessary to win in court. And that's the same analysis, really, that it flows from these broader Supreme Court cases like the Pennsylvania case and the Kerry case that Sullivan v. Hudson talks about and cites. I'm sorry, the Alaska case is what? It's Village of Quinn Haggatt. I hear it. Quinnahawk is the way I hear it. Quinnahawk, excuse me. Native Village of Quinn Haggatt. We have an Alaskan in the house. Excuse me. 307 F. 3rd, 1075, and we addressed it in our answering brief. What I was trying to get at in raising that is to show both that the Ninth Circuit hasn't simply rejected Sullivan v. Hudson, I think the way the government is interpreting it, and continues to look to these broader principles that the Supreme Court articulated in Delaware Valley v. Pennsylvania, New York v. Kerry.  And Justice O'Connor, who did, by the way, write the Shalala decision as well, she wrote all three of them. We think the principles we found persuasive in Delaware Valley and Kerry are controlling here. That's Sullivan following those about when administrative procedures are crucial to the vindication of respondents' rights. That's what we had here, because in order to overcome the normal APA presumption in favor of agency scientists, we had to put them on the stand and cross-examine them, and you don't normally get that in administrative appeals. I've been an environmental lawyer for 20 years now, and I can tell you that in the Forest Service you don't get a chance to do that. With the Fish and Wildlife Service, other agencies, there aren't any provisions for putting the government's witnesses under oath and creating a de novo record in front of an administrative law judge. The BLM's grazing regs are unique in that way. And even more unique is what happened here, that you go from a hearing officer to the Interior Board of Land Appeals, which also reviews. The ALJ creates a de novo record and decision, and then the IBLA reviews that de novo as well, and then we go into district court. So it's a very unusual procedure that you don't see often. So I think the government's attempt to sway you by saying, if you vote for us here you'll open up the floodgates to administrative fees, I don't think that's well taken. I think it is an unusual case, and we would have argued that to Judge Windmill in more detail. He could have had a chance to make findings about did the Hahn litigation, his continuing jurisdiction there, the importance of what we did in our administrative, how did that all fall under Sullivan had they presented that argument to him. So I do believe that he correctly interpreted the law under Sullivan. Sullivan has not been reversed, overruled, or whatever. The government's trying to read limitations on it from the subsequent cases, Melkoian, Shalala, but those are actually not cases about the availability of administrative fees. They're about timing for seeking fees under each. And there is some dicta in Melkoian that helps the government and hurts us, but Justices Blackman and I forget the second one in the Shalala case, in their concurring opinion, termed that language dicta. It really is dicta. So the government's asking you to read a limitation, an overruling of Sullivan that does not exist, and I don't think it's appropriate. And I think particularly under this case where the argument wasn't fully fleshed out in front of the district court, it would be inappropriate for this court to adopt the government's new argument. Can I ask you a question? Yes. If we vote for you here, what are you going to argue in the United States Supreme Court? Are you going to ask that they overrule anything or what? If you rule for me here, my hope is you rule on grounds that the government has waived their objection and that has no precedential value and is very fact specific and let this issue be decided on a proper record some other day. If we rule that way, then I at least would dissent from that. And if you rule – I'd want to hear the merits, so I'd like to hear what – Then if you rule on the merits – I'd like to hear what – in response to her question, what would you tell the Supreme Court on the merits? If we get – the second remedy I would ask for is if you're not inclined to find waiver, remand to the district court for us to go through this at the district court level and do it right, rather than you just ruling on the imperfect partial record and let the district court do it. So that would be my second thing. But if we end up in the Supreme Court, I'm going to argue the basic principles. We have different membership on the court than we had when that suite of cases was decided. Justice O'Connor is gone. The Chief Justice at the time, Rehnquist, is gone. There's new faces there. I don't know how they're going to come out. And I think that, you know, we would go back to these first principles that are articulated in Delaware Valley, Kerry, Sullivan, and we would focus on this Court's ruling that the grazing permit appeals themselves are not adversarial administrative adjudications. They're non-adversarial. That's a term of art under the APA, and that's important, because Sullivan expressly rejected the government's argument that under the aegis structure, courts could not award administrative fees for non-adversarial proceedings under 2412D1A. That is expressly held in Sullivan, rejecting essentially the argument that's being made here that because there's fees available under 504 and 2412D3, you can't give any administrative fees under 2412D1A. That was rejected in Sullivan, and that's the argument where we are. We fit within that box, and that's the argument we'd make to the Supreme Court. Judge Schroeder. Would you ask them to disregard some of the language in Shalala? Well, again, those cases dealt with timing, and we would say, and we would quote the concurring justice's opinion that it was dicta. What is dicta? It's hard to say. Maybe it's tea leaves. Maybe it's a guidepost, but it's not central to the holding of those cases. Disregard. And in terms of Ardesti and the waiver of sovereign immunity, if you look at the Ardestani opinion, 502 U.S. 129, it says the court should be careful. It says because sovereign immunity waiver is a doctrine, the court should be careful not to assume the authority to narrow the waiver that Congress intended, citing cases. And we have Richland Security Service v. Chertoff, which is 553 U.S. 571, and the U.S. Supreme Court 2008, and it talks about how sovereign immunity canon is just that, a canon of instruction. It's a tool for interpreting, and it shouldn't be allowed to change the statutory scheme that Congress has provided. So if Congress has waived fees, waived sovereign immunity under 2412 D1A, as interpreted by Sullivan in the district court here, then the doctrine of waiver of sovereign immunity should not come into play to result in a more crabbed interpretation. In terms of relief, as I indicated, we'd prefer that you affirm on grounds that their objections were waived. But if not, bear in mind that we have undisputed fees for the district court. That's about $80,000. Those have been owing since July 2010. They're not disputed at all. Most of what they did in the district court was dispute the time and the hourly rates and all of that. That's gone. So at a minimum, please order them to pay the undisputed fees, whatever you do with the rest of the case. That sounds fair. Then why hasn't the government paid the portion of the fees that they agree with? Your Honors, the BLM considered doing that. The way that it works with BLM procedure is the BLM submits a final judgment, and that is what triggers payment. The final judgment in this case was rendered non-final when they appealed. That's the technical reason. I think it would have been possible. But interest is accruing, I presume. Yes, Your Honor. I believe so. Okay. Your Honors, just a few points. The first is that the village of Quinnahawk, I now know how to pronounce it, did, in fact, deal with a different statute. And more importantly, that statute, ANILCA, had very different language. It allowed for awards of fees in any action. It didn't distinguish, as EJA does, between administrative proceedings and district court civil actions. And also, in that case, the Ninth Circuit held that the very purpose of ANILCA had been to create an administrative process, and so it was particularly compelling in that case to find that administrative proceedings should be eligible for fees. So that is a very different case, and it's the only Ninth Circuit case that WWP has cited in its support. In Nataraja, there is a quote from the Ninth Circuit explaining that, since Artestani, Hudson's holding has been narrowly applied and limited to post-litigation situations like Polgreen, which is an Eleventh Circuit case. It's the only circuit case I've been able to find in which a court applied Hudson in a non-social security context. And again, it was a very interesting hybrid proceeding there, too, where the court had jurisdiction and it sent it back in Polgreen. So the court's explaining that Hudson has been limited to post-litigation situations like Polgreen, where there was a court-ordered remand for further administrative proceedings, and here the district court noted that there was no remand, and the agency representation was necessary to carrying out the court's order. That is simply not the situation here. With that, Your Honors, the government respectfully requests that you reverse. Thank you. Okay, the Western Watersheds Project case shall be submitted. I want to thank both counsel for great arguments. Thank you. Thank you, Mr. Lucas, for coming from Boise. And Ms. Hargrove, thank you for coming from Boise.
judges: Beistline, Schroeder, Gould